Suella **DEBOLT**, et al., Plaintiffs,

v.

Mike **ESPY**, Secretary, U.S. Department of Agriculture, et al., Defendants.

No. C2–91–157.

United States District Court, S.D. Ohio, E.D.

July 18, 1993.

Sandra A. Scott, Southeastern Ohio Legal Service, Zanesville, OH, Gary Michael Smith, Southeastern Ohio Legal Service, New Philadelphia, OH, for Suella Debolt.

Sylvia T. Kaser, U.S. Dept. of Justice, Chief, Special Litigation Section, Washington, DC, O. Charles Hosterman, U.S. Atty., Columbus, OH, for all other defendants.

James D. Thomas, Robert L. Hust, Squire, Sanders and Dempsey, Columbus, OH, for Woodrose Ltd.

### MEMORANDUM AND ORDER

BECKWITH, District Judge.

#### Background

This case is currently before the Court to consider several motions filed by the parties in this action. This matter arose when Suella Debolt filed a complaint against two private Defendants, the owner and management company of the housing project in which she resided, and against several federal Defendants, the Secretary of Agriculture, and the Administrator, State Director, and a District Director of the Farmers Home Administration (hereinafter the "FmHA"). Following their settlement with the Plaintiff, the private Defendants were dismissed from this case in February of 1992. In her complaint, the Plaintiff contends that the FmHA's occupancy limits combined with the agency's administration of the Rural Rental Housing program produce a discriminatory impact on families with children.

Beginning in 1986, Ms. Debolt resided in the Village Green Apartments, a "Section 515" project. The FmHA administers a program called the Rural Rental Housing program or Section 515 program. Under Section 515, the FmHA administers the Section 515 program through loan programs and through project operations. The loan programs aid in the construction of rental housing for very low, low, or moderate income persons or families residing in rural areas experiencing a shortage of adequate housing. 42 U.S.C. § 1485. Ms. Debolt's lease contained a provision that limited the number of occupants in her apartment to four persons. In 1991, when Ms. Debolt gave birth to a fourth child, she was in violation of the lease's four person occupancy limit. Accordingly, the management of the Village Green Apartments notified Ms. Debolt that she was required to move at the end of her lease term.

However, as part of the settlement of the eviction action pending against her, Ms. Debolt stayed in her apartment for an additional year. Later, in December of 1991, Ms. Debolt had a fifth child and she was unable to find a larger unit in FmHA's Rural Rental Housing Program, so she moved in with relatives.

On September 30, 1992, this Court granted the Plaintiffs' motion to certify this matter as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Plaintiff class has been certified as:

all persons who either are or would be eligible to reside, or to continue to reside within a project financed under FmHA's Section 515 Rural Rental Housing Program, but for the fact that their family size exceeds that permitted to reside in a two bedroom apartment under FmHA's occupancy standards.

The Plaintiffs' First Amended Complaint pleads a class action challenging the promulgation and enforcement of an FmHA regulation, 7 C.F.R. § 1944.553, as conflicting with 42 U.S.C. §§ 1471, 1480, and 1485. The Plaintiffs argue that § 1944.553 was promulgated in violation of the Administrative Procedure Act (hereinafter the "APA"). The Plaintiffs also argue that the Defendants improperly administer the Section 515 programs in the State of Ohio. The Plaintiffs assert that the Defendants have a duty to review and disapprove non-complying termination notices to tenants, but that they have failed to do so. The Plaintiffs also assert that the Defendants have approved a model rental agreement which does not provide for a yearly rental term. The Plaintiffs also allege that these federal officials failed to administer the Section 515 program to meet the needs of eligible families. The Plaintiffs specifically assert that this improper administration arbitrarily and unlawfully denies or terminates eligibility for financially eligible tenants and applicant families needing more than two bedrooms under FmHA's restrictive occupancy limits. The Plaintiffs further allege that these occupancy limits, along with the Defendants' improper administration, produce a discriminatory and unlawful disparate impact upon families with children, in violation of the Fair Housing Act.

### The Federal Defendants' Motion for Judgment on the Pleadings

The federal Defendants have filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In their motion, the federal Defen-

dants assert that this Court is without jurisdiction to adjudicate the Plaintiffs' claims, except for those claims contained in Count 5 of the Plaintiffs' complaint. The federal Defendants first contend that Counts 3, 4, 6, 7, 8, 9, and 10 are barred by the doctrine of sovereign immunity. The federal Defendants also contend that the Plaintiffs have no private right of action under either the United States Housing Act of 1949 (hereinafter "USHA") or the Fair Housing Act, if sovereign immunity has been waived. The federal Defendants finally argue that the Plaintiffs lack standing to assert their claims that FmHA must finance rental housing units of a particular size.

However, the Plaintiffs argue that their claims are not barred by the doctrine of sovereign immunity as the law is allegedly well settled that statutory and constitutional claims for equitable relief are not barred by sovereign immunity. Also, the Plaintiffs argue that their claims for individual damages and attorney fees under Title VIII are not barred by sovereign immunity, since such immunity was waived by Congress.

Under the Administrative Procedure Act, Title 5 Section 702 provides, in part:

... An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

■■■ Thus, Section 702[1] of the APA acts to waive sovereign immunity for the Plaintiffs' USHA and constitutional claims. However, in their complaint, the Plaintiffs have only asserted one of their eight remaining claims under the APA. After a careful review of the authorities and arguments advanced by the parties in their memoranda,

---

1. Under the APA, the judicial scope of review has been established by Section 706. Section 706 provides, in part, that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law; (b) contrary to constitutional right, power, privilege or immunity; (c) in excess of statutory jurisdiction, authority, or limitations or short of statutory right; (d) without observance of procedure by law...."

this Court finds that it agrees with the federal Defendants that all of the Plaintiffs' claims should be asserted under the APA. Accordingly, the next question is whether the Plaintiffs should be given leave to amend their complaint to assert their claims under the APA. The federal Defendants argue that the Plaintiffs should not be given leave to amend their complaint in this case to invoke the Administrative Procedure Act, since the litigation has been pending for more two years. However, the Court notes that the federal Defendants did not raise this issue until they filed this motion for judgment on the pleadings. The first mention of this issue was contained in the federal Defendants' motion for judgment on the pleadings which was filed almost two years after the institution of the case.

The Court first notes the rationale expressed by Judge Whipple of the Western District of Missouri in the case of *Tinsley v. Kemp*, 750 F.Supp. 1001 (W.D.Mo.1990). In *Tinsley*, Judge Whipple stated, in part:

> The intent of the complaint is obvious, so the amendment would be almost a formality. Nevertheless, plaintiffs' basis for bringing civil rights claims against a federal agency should be established explicitly in their complaint. Accordingly, leave will be granted to amend the complaint.

*Id.* at 1010. In another case, Judge Haight of the Southern District of New York allowed plaintiffs to amend their complaint to invoke the Administrative Procedure Act. *Almonte v. Pierce*, 666 F.Supp. 517, 524–5 (S.D.N.Y. 1987). In *Almonte*, Judge Haight noted that the case was at the early stage of litigation and that the federal Defendants had not demonstrated that any prejudice would result from allowing the plaintiffs to amend their complaint. *Id.* at 525.

In this case, the federal Defendants have not established that any specific prejudice would result from allowing the Plaintiffs to amend their complaint at this late date. The federal Defendants do allege that "voluminous" discovery has occurred in this case, although they do not allege how a technical amendment to the Plaintiffs' complaint would

affect whatever discovery has already occurred in this case. The Court simply can not infer that prejudice would result from an amendment which is "almost a formality." *See*, 750 F.Supp. at 1010. Moreover, Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires." As in *Tinsley*, the Plaintiffs' intent as expressed by their complaint is evident, and the amendment in this case is thus a mere formality. Under the circumstances presented by this case, the Court finds that justice mandates that the Plaintiffs be given leave to amend their complaint. The Court hereby DEEMS the Plaintiffs' complaint to be amended so that their claims are now asserted under the Administrative Procedure Act. The federal Defendants' motion for judgment on the pleadings is hereby **DENIED**.[2]

### The Motions for Summary Judgment Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The purpose of a summary judgment motion is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978).

In 1986, the United States Supreme Court issued three decisions which gave new life to Rule 56 as a mechanism for weeding out certain claims at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is well recognized

---

2. Due to its ruling on the Section 702 jurisdictional issue, the Court will not discuss the other arguments advanced by the parties on the motion for judgment on the pleadings.

that these cases brought about a "new era" in summary judgment practice. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The three opinions by the Supreme Court reflect a return to the original purpose of the summary judgment motion. *Id.*

■ Accordingly, the summary judgment "standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–8, 106 S.Ct. at 2510 (emphasis in original). Moreover, when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the Court must enter summary judgment against that party, pursuant to Rule 56. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, in order to survive a motion for summary judgment,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (emphasis in the original) (footnote and citations omitted).

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Accordingly, mere allegations are not sufficient to defeat summary judgment. The Court can now apply this standard to the Plaintiffs' and the federal Defendants' motions for summary judgment.

### The Federal Defendants' Motion for Summary Judgment

The federal Defendants first contend that neither the United States Housing Act of 1949 ("USHA") nor the Fair Housing Act commands the FmHA to finance construction of additional three and four bedroom units or to dictate to private developers that they must build such units. Since no three bedroom apartments were available for Ms. Debolt when her family size increased to five, the Plaintiffs assert that the FmHA through its improper administration has violated Ms. Debolt's rights under the USHA, Section 515 of USHA, and the Fair Housing Act. However, the Plaintiffs have not indicated exactly what statutory directive supports these alleged rights.

■ The Court has already determined that the Plaintiffs' claims are reviewable solely under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Pursuant to the APA, the FmHA's administration of the Rural Rental Housing Program may only be set aside if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; . . . [or] in excess of statutory right. . . ." 5 U.S.C. § 706; *Jaimes v. Toledo Metropolitan Housing Authority*, 715 F.Supp. 835, 839 (N.D.Ohio 1989).

The Court first notes that pursuant to Section 515 of the Rural Rental Housing program, the FmHA is authorized to utilize its discretion in its financing of elderly, family or handicapped housing. 42 U.S.C. § 1485. The Court agrees with the federal Defendants that the FmHA is not required to finance any particular proportion of each type of housing. Moreover, the Court agrees with the federal Defendants that the provisions cited by the federal Defendants in their memoranda support their argument that it was Congress' intention that the private sector take an active role in meeting the nation's housing needs.

Additionally, the federal Defendants argue that the familial status provision of the Fair Housing Act does not require the FmHA to

finance, or private developers to construct, housing for large families. On the other hand, the Plaintiffs argue that the Fair Housing Act obligates the FmHA to evaluate and consider the impact of proposed housing on existing discriminatory housing patterns, to refrain from approving housing that reinforces those patterns, and to affirmatively promote non-discriminatory housing, relying on *Jaimes v. Lucas Metropolitan Housing Authority,* 833 F.2d 1203 (6th Cir.1987); and *Garrett v. Hamtramck,* 503 F.2d 1236 (6th Cir.1974).

In 1988, Congress passed the Fair Housing Amendments Act of 1988 which amended the Fair Housing Act of 1968, which is located in 42 U.S.C. §§ 3601–3631. The Fair Housing Act is also referred to as Title VIII of the Civil Rights Act of 1968. Pursuant to Title VIII, discriminatory housing practices based on race, color, national origin, religion, and sex are prohibited. The 1988 Amendments added "familial status" as a protected category with respect to discriminatory housing practices. The Court notes that as opposed to families in general, "large families" are not a specifically protected class under Title VIII. Indeed, the Court notes that in this case Ms. Debolt did not violate her lease and receive an eviction notice until the birth of her fourth child. Accordingly, Ms. Debolt resided in the apartment with children for some length of time before she violated the four person occupancy limit.

The Court finds that the Plaintiffs' position here is not supported by the Fair Housing Act, the legislative history of the Act, the administrative interpretation of the Act by the Secretary of HUD, and the relevant case law. Indeed, the Plaintiffs simply have no right to public housing, and the FmHA is not obligated to finance or to compel private developers to build large apartment units. *See, Citizens Comm. for Faraday Wood v. Lindsay,* 507 F.2d 1065, 1070–71 (2d Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975); *Mahaley v. Cuyahoga Metro. Housing Authority,* 500 F.2d 1087, 1093 (6th Cir.1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 781, 42 L.Ed.2d 805 (1975).

■ The federal Defendants also contend that the Secretary's regulations effectuate the policies and purposes of the Rural Rental Housing Program and the Fair Housing Act. The Plaintiffs contend that the FmHA's duties under the Act are found in the case law interpreting Section 3608. The federal Defendants concede that Section 3608(d) is applicable to the various FmHA programs. The Plaintiffs' complaint here focuses on alleged "improper administration" of the Rural Rental Housing Program by the FmHA. The Plaintiffs' claims here originate because Ms. Debolt was not able to obtain a larger, FmHA subsidized apartment and because as many as 15% of eligible families are not able to obtain such housing. In this area, the Plaintiffs' claims are governed by the narrow scrutiny of Section 3608 and the Administrative Procedure Act. *See, N.A.A.C.P. v. Secretary of Housing & Urban Dev.,* 817 F.2d 149, 157–58 (1st Cir.1987).

Section 3608(d) of Title VIII provides that the FmHA "shall administer [its] programs and activities relating to housing ... in a manner affirmatively to further the purposes of [the Fair Housing Act]." 42 U.S.C. § 3608(d). The Court finds that the Plaintiff has not presented any evidence that demonstrates that the FmHA acted arbitrarily in deciding its obligations under Section 3608.

■ Additionally, the federal Defendants contend that no equal protection violations occurred in this case, since the FmHA's actions were rationally related to the USHA's legitimate purpose. The federal Defendants have demonstrated that the existing stock of housing is the product of a rational, market-based process. The Plaintiffs have not presented evidence to the contrary.

■ Moreover, the federal Defendants assert that the Plaintiffs' allegations do not rise to the level of a substantive due process violation. In support of this claim, the Court finds that the Plaintiffs have not presented any evidence that supports the extremely high standard of proof required for a substantive due process claim.

■ Also, the federal Defendants argue that the Plaintiffs' claim against the FmHA as a third party beneficiary must be dis-

missed, since the Plaintiffs have no actionable rights as a third-party beneficiary. The Plaintiffs claim that the "financial, contractual and fiduciary relationship" with respect to the operation of the Village Green Apartments gives rise to certain third party beneficiary rights, and that these rights were violated. The federal Defendants assert that the Plaintiffs have failed to identify any particular contractual arrangement which would give rise to her rights as an alleged third party beneficiary.

The courts have generally concluded that tenants are not third-party beneficiaries to regulatory agreements under the USHA. *See, e.g., Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210, 1218 (4th Cir. 1981); *Falzarano v. United States,* 607 F.2d 506, 511 (1st Cir.1979); *Angleton v. Pierce,* 574 F.Supp. 719, 735–6 (D.N.J.1983), *aff'd,* 734 F.2d 3 (3d Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Carson v. Pierce,* 546 F.Supp. 80, 86–7 (E.D.Mo.1982), *aff'd,* 719 F.2d 931 (8th Cir. 1983). Thus, the Court finds that the Plaintiffs have no actionable rights as third-party beneficiaries with respect to the operation of the Village Green Apartments.

■ The federal Defendants also argue that the Plaintiffs cannot establish that FmHA failed to review her notice of eviction and that such a failure violated her rights. The Plaintiffs' claim here appears to be that the FmHA failed to meet its regulatory duty to disapprove legally deficient eviction notices utilized by borrowers and landlords.

The Court notes first that the Plaintiffs have not asserted that the FmHA failed to review the particular eviction notice that was served upon Ms. Debolt. Thus, it appears to the Court that the Plaintiffs lack standing on this issue. *See, Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2140, 119 L.Ed.2d 351 (1992).

■ The federal Defendants also argue that the Plaintiffs have procedural safeguards with respect to eviction notices under Ohio landlord-tenant law. The Court finds that the existence of this procedural safeguard removes the potential of a due process violation arising from the FmHA's failure to review the eviction notices.

■ Additionally, the federal Defendants assert that the Plaintiffs' claims concerning FmHA's model lease terms are moot. The Plaintiffs assert that the FmHA's model lease violated both the USHA and the APA. The Plaintiffs argument is that the month-to-month renewal term allowed by the Ohio model lease violates USHA's regulations which mandate that "[l]eases for units for which tenants are eligible must cover a period of one year...." 7 C.F.R. Ch. XVIII Pt. 1930, Subpt. C., Exh. B at par. VIII(A)(1).

On August 28, 1992, the director of FmHA's Ohio office issued Administrative Notice 956, that contained a new form of model lease that provided for rental terms of one year. Accordingly, the Court finds that the Plaintiffs' claim regarding the month-to-month rental term is now moot.

As it has determined that the federal Defendants' motion for summary judgment is meritorious, the Court need not discuss why it has concluded that the Plaintiffs' two motions for summary judgment lack merit.

### Conclusion

For the reasons outlined above, the Court hereby DENIES the Defendants' motion for judgment on the pleadings. The Court hereby DEEMS the Plaintiffs' complaint to be amended so that their claims are asserted under the Administrative Procedures Act.

For the reasons outlined above and for the reasons stated by the federal Defendants in their memoranda, the Court hereby GRANTS the federal Defendants' motion for summary judgment, and this case is hereby DISMISSED.

**IT IS SO ORDERED.**