29 F.3d 1413
 63 USLW 2056, 6 A.D.D. 175, 5 NDLR P 196
 UNITED STATES of America, Plaintiff,
and
Elayne Cohen-Strong, Intervenor-Appellant,
v.
CALIFORNIA MOBILE HOME PARK MANAGEMENT CO.; and Brian
Dougher, d/b/a Costa Mesa Mobile Estates,
Defendants-Appellees.
 Nos. 92-55568, 92-56026.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided July 18, 1994.
 
 No appearance for plaintiff.
 Paul M. Smith, John P. Relman, Klein, Farr, Smith & Taranto, Washington, DC, for intervenor-appellant.
 La Verne J. Bugna, Newport Beach, CA, for defendants-appellees.
 Elizabeth M. Brown, Shea & Gardner, Washington, DC, for amici curiae.
 Appeal from the United States District Court for the Central District of California.
 Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.
 FRANK A. KAUFMAN, Senior District Judge:
 Elayne Cohen-Strong, whose young daughter has a respiratory disease requiring the supervision of a home health care aide, appeals the district court's denial of her motion to intervene and dismissal of this action against the owner and manager of the mobile home lot where she and her daughter reside. Cohen-Strong alleges that the defendants discriminated in violation of the Fair Housing Amendments Act of 1988 ("FHAA"), by refusing to waive guest fees charged for her handicapped daughter's home health care aide. The principal issue in this appeal is whether the duty imposed under the FHAA to make "reasonable accommodations in rules" on behalf of handicapped persons may require a landlord to waive, in a given instance, fees generally applicable to all residents. Concluding that generally applicable fees are not immune from scrutiny for compliance with the FHAA's requirement of reasonable accommodation, and that Cohen-Strong is statutorily entitled to intervene, we reverse the judgment of the district court and remand for further proceedings.
 BACKGROUND AND PROCEDURAL HISTORY
 In 1989, plaintiff Cohen-Strong, and her infant daughter, were residing at a mobile home lot leased from defendant Costa Mesa Mobile Estates. Cohen-Strong's daughter had a respiratory disease which required her to be cared for by a home health care aide. The Management Company of Costa Mesa Estates demanded payment from Cohen-Strong for the presence of the home medical aide pursuant to its policy of charging residents a fee of $1.50 per day for the presence of long-term guests and $25.00 per month for guest parking. Cohen-Strong asked the Management Company to waive imposition of the fees on behalf of her daughter; however, that request was refused. As a result, Cohen-Strong paid $175 for the 2 1/4 months for which fees were assessed.
 On September 12, 1989, Cohen-Strong filed a housing discrimination complaint against defendants with the Department of Housing and Urban Development ("HUD"). The Secretary of HUD investigated her complaint, determined that reasonable cause existed to believe defendants had engaged in discriminatory practices, and charged defendants with a violation of the Fair Housing Act, 42 U.S.C. Sec. 3604.
 Cohen-Strong elected to have her case prosecuted on her behalf by the Department of Justice ("DOJ") in federal district court pursuant to 42 U.S.C. Sec. 3612(a). The DOJ filed a complaint in the Central District of California alleging that defendants had violated the Fair Housing Act by failing to make reasonable accommodations in housing. On January 6, 1992, defendants moved to dismiss, alleging that the Fair Housing Act does not require landlords to waive fees applicable to other residents generally. The district court judge granted the defendants' motion on January 27, 1992, without a written or oral opinion.
 Sixty days after the district judge issued the order of dismissal, Cohen-Strong learned that the United States would not be appealing her case. Acting pro se, she requested and received from the district court on April 3, 1992, an extension of time until April 27, 1992, to file a notice of appeal. On April 24, 1992, she timely filed a notice of appeal and also a motion to intervene with the district court. The notice of appeal was accepted on April 24; however, the hearing on the motion to intervene was set for May 18, 1992. On May 18, 1992, Cohen-Strong appeared before the District Court, but was advised that her motion to intervene was not on the court calendar for that day. On June 8, 1992, recently retained counsel for Cohen-Strong refiled the motion for leave to intervene in order to seek a new hearing date.
 On June 16, 1992, this Court issued an Order to Show Cause why Cohen-Strong's appeal should not be dismissed for lack of standing given that she was not a party below. Then, on July 13, 1992, the district court denied without prejudice Cohen-Strong's motion to intervene on the grounds that the district court lacked jurisdiction to grant such relief while the case was on appeal to this court. Cohen-Strong subsequently filed a second notice of appeal in response to the July 13 order. Satisfied with Cohen-Strong's response to the Order to Show Cause, this court discharged the Order to Show Cause on August 3, 1992, and consolidated Cohen-Strong's appeal on the merits with her appeal from the district court's denial of intervention.
 STANDARD OF REVIEW
 This court reviews a district court's order of dismissal for failure to state a claim de novo. Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir.1990). This court accepts "the allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff." Id.
 The denial by a district court of a motion to intervene as of right is reviewed de novo, Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States, 921 F.2d 924, 926 (9th Cir.1990), as are the legal conclusions of a district court based on statutory construction, Earles v. United States, 935 F.2d 1028, 1030 (9th Cir.1991).MOTION TO INTERVENE
 Cohen Strong's notice of appeal was accepted and lodged with this Court before the district court had ruled with regard to Cohen-Strong's motion to intervene. Thus, the question arises as to whether plaintiff's appeal on the merits is properly before us. The district court did not rule on the motion prior to accepting the notice of appeal. That inaction effectively constituted a denial of that motion. Under the Fair Housing Act, a plaintiff is entitled to intervene as of right and to substitute herself for the United States on appeal. United States v. Presidio Invs., Ltd., 4 F.3d 805, 808 n. 1 (9th Cir.1993). Because Cohen-Strong timely filed her notice of appeal after the motion for intervention was effectively denied, her appeal on the merits is properly before us.
 MOTION TO DISMISS
 In granting defendants' motion to dismiss, the district court presumably concluded that the Fair Housing Act ("FHA"), 42 U.S.C. Sec. 3601 et seq., is never violated when a landlord refuses to waive generally applicable fees on behalf of a handicapped person. We disagree.
 The FHA originally prohibited discrimination on the basis of race, color, religion, or national origin. The Supreme Court has ruled that the FHA must be given a "generous construction" in order to carry out a " 'policy that Congress considered to be of the highest priority.' " Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211, 212, 93 S.Ct. 364, 367, 368, 34 L.Ed.2d 415 (1972); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982); United States v. Gilbert, 813 F.2d 1523, 1526-27 (9th Cir.), cert. denied, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). The generous spirit with which we are to interpret the FHA guides our analysis here.
 Congress extended the FHA's protection to handicapped persons in the Fair Housing Amendments Act of 1988 ("FHAA"), Pub.L. 100-430, 102 Stat. 1619. Among the discriminatory practices proscribed by the amended Act is the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. Sec. 3604(f)(3)(B). Cohen-Strong argues that a landlord's refusal to waive guest fees for a handicapped person's medical aide may constitute a refusal to make reasonable accommodations, in violation of Sec. 3604(f)(3)(B).
 As the language of Sec. 3604(f)(3)(B) makes clear, the FHAA imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons. See H.R.Rep. No. 100-711, 100th Cong., 2d Sess. 1, 25 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186. Defendants assert, nonetheless, that this affirmative duty does not entail any requirement that landlords "financially subsidize" the handicapped. We find the effort to distinguish accommodations that have a financial cost from other accommodations unconvincing. Besides the fact that Sec. 3604's reasonable accommodations requirement contains no exemption for financial costs to the landlord,[1] the history of the FHAA clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome.
 Congress based the FHAA's reasonable accommodations provision on the "regulations and caselaw dealing with discrimination on the basis of handicap" under section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, which prohibits discrimination against the handicapped in federally funded programs. See H.R.Rep. No. 100-711 at 25, reprinted in 1988 U.S.C.C.A.N. at 2186; see also id. at 17, reprinted in 1988 U.S.C.C.A.N. at 2178 (the FHAA "uses the same definitions and concepts" used in Sec. 504).[2] The Supreme Court has held that, under the Rehabilitation Act, a proposed accommodation should not impose "undue financial ... burdens" upon the accommodator, a rule that clearly contemplates some financial burden resulting from accommodation. Southeastern Community College v. Davis, 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979); see also Nelson v. Thornburgh, 567 F.Supp. 369, 380-81 (E.D.Pa.1983) (requiring employer to expend its own funds to provide readers for blind employees pursuant to Rehabilitation Act), aff'd, 732 F.2d 146 (3d Cir.1984) (table), cert. denied, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985). Therefore, in light of the legislative history of the FHAA and its incorporation of the Rehabilitation Act's standards regarding reasonable accommodations, we hold that Sec. 3604(f)(3)(B) may require landlords to assume reasonable financial burdens in accommodating handicapped residents.[3]
 Although defendants argue that any fee which is generally applicable to all residents of a housing community cannot be discriminatory, the Act itself is concerned with facially neutral rules of all types. Congress recognized that "[a]nother method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on health, safety and land-use in a manner which discriminates against people with disabilities.... These and similar practices would be prohibited." H.R.Rep. No. 100-711, at 24, reprinted in 1988 U.S.C.C.A.N. at 2185. See also United States v. Village of Marshall, Wis., 787 F.Supp. 872, 879 (W.D.Wis.1991) ("strict adherence to a rule which has the effect of precluding handicapped individuals from residing in the residence was precisely the type of conduct which the Fair Housing Amendment Act sought to overcome with the enactment of Sec. 3604(f)(3)(B)").
 Finally, to exempt generally applicable fee rules from scrutiny under the FHAA would permit landlords to circumvent the Act's requirements simply by imposing fees for certain matters, rather than by imposing flat bans or other types of restrictive rules. For example, the regulations interpreting the FHAA provide that a landlord must waive a "no pets" rule for a blind tenant who requires a seeing-eye dog, and that a landlord must waive a "first come, first serve" rule for allocating parking spaces when a mobility-impaired tenant requires a parking space near her unit. 24 C.F.R. Sec. 100.204(b) (1993). Under defendants' interpretation of the FHAA, a landlord might "allow" the blind tenant to have a dog, or the mobility-impaired tenant to have priority for a parking space, while imposing a high fee for exercising that right. In some extreme cases, such a fee could effectively prevent the handicapped tenant from obtaining the needed benefit.
 In order to trigger review under Sec. 3604(f)(3)(B), the challenged fee rule must, like the rules described above, have the potential to deny persons an "equal opportunity to use and enjoy a dwelling" because of their handicap. There are, of course, many types of residential fees that affect handicapped and non-handicapped residents equally; such fees are clearly proper. Fees that merit closer scrutiny are those with unequal impact, imposed in return for permission to engage in conduct that, under the FHAA, a landlord is required to permit.
 Some generally applicable fees might be too small to have any exclusionary effect. Other fees might be sustained because to require their waiver would extend a preference to handicapped residents, as opposed to affording them equal opportunity.[4] The waiver of others might impose an undue financial burden on the landlord. The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination. See Edmonds, 18 F.3d at 806; Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 877-78 (9th Cir.1989) (interpreting reasonable accommodation provision in state antidiscrimination statute), cert. denied, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990); Chalk v. United States Dist. Court Cent. Dist., 840 F.2d 701, 705 (9th Cir.1988) (interpreting reasonable accommodation provision of Rehabilitation Act). In a case such as this one, a reviewing court should examine, among other things, the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant.
 In the present case, it is clear that the factual inquiry was prematurely terminated. Final judgment was granted solely on the pleadings: no evidence or testimony was heard on defendants' motion to dismiss and no discovery had yet been conducted. Cohen-Strong thus had no opportunity to develop a record to support her claim of discrimination. She therefore was unable to demonstrate that the fees involved had the effect of denying her an equal opportunity to use and enjoy her dwelling. It is axiomatic that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); see also Jackson v. Southern Calif. Gas Co., 881 F.2d 638, 643 (9th Cir.1989) (same). Since we hold that a landlord's refusal to waive generally applicable fees may, under some circumstances, constitute discrimination on the basis of handicap, Cohen-Strong must be afforded the opportunity to develop a full record in support of her claim.
 We are not presently deciding that the fees in this case were improperly assessed. We hold only that such charges must be examined on a case-by-case basis to determine whether, in a given case, a waiver of the charge, in whole or at least in part, "may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling," 42 U.S.C. Sec. 3604(f)(3)(B), and whether such waiver would impose an undue burden on the landlord. Therefore, we reverse and remand to the district court for proceedings consistent with this opinion.
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Frank A. Kaufman, United States District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 Cf. City of Edmonds v. Washington State Bldg. Code Council, 18 F.3d 802 (9th Cir.1994), (refusing to recognize exemption from reasonable accommodations requirement for zoning ordinance, emphasizing that such an exemption not evident from plain language of FHAA)
 To support an exemption for financial accommodations, defendants point to Sec. 3604(f)(3)(A), which requires landlords to permit "reasonable modifications of existing premises" as long as the handicapped resident pays the cost of such modifications. However, it is notable that, in contrast to Sec. 3604(f)(3)(A), the reasonable accommodations requirement described in Sec. 3604(f)(3)(B) does not specify that the handicapped resident should bear any financial burden imposed.
 
 
 [2]
 The regulations implementing Sec. 504 describe the reasonable accommodation requirement which Congress expressly included as part of the statutory language of the FHAA. See, e.g., 45 C.F.R. Sec. 84.12(a) (1992) (Department of Health and Human Services regulations implementing Sec. 504): "A recipient [of federal funds] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant...."
 
 
 [3]
 We note that, although the FHAA was enacted relatively recently, the courts that to date have interpreted its "reasonable accommodations" language have all applied the "undue financial burden" standard developed under the Rehabilitation Act. See Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 461 (D.N.J.1992); United States v. City of Taylor, 798 F.Supp. 442, 447 (E.D.Mich.1992); Oxford House-Evergreen v. City of Plainfield, 769 F.Supp. 1329, 1344-45 (D.N.J.1991)
 
 
 [4]
 For example, the landlord of an apartment complex may charge all residents a monthly fee for parking their car. Although a handicapped resident may require a car far more than other residents, a waiver of the car fee would put him in a privileged position in relation to other residents
 Here, while we remand for further inquiry into the merits of the present fee, it seems likely that few other residents would have a "guest" requiring an extra parking space every day. It is thus much less probable that waiver of guest fees would give Cohen-Strong an advantage over other residents.